NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROCHELLE PETTIFORD,<br><br>                  Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                  Defendant. | Civil Action No. 17-4356 (SDW)<br><br>**OPINION**<br><br>October 25, 2018 |

**WIGENTON,** District Judge.

Before this Court is Plaintiff Rochelle Pettiford's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"). Specifically, Plaintiff appeals Administrative Law Judge Donna A. Krappa's ("ALJ Krappa") denial of her claim for a period of disability and disability insurance benefits under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ Krappa's factual findings are supported by substantial credible evidence and that her legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

## I. PROCEDURAL AND FACTUAL HISTORY

### A. Procedural History

On February 8, 2013, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability due to degenerative joint disease, arthritis, radiculopathy, and disc herniation beginning on June 5, 2012. (Administrative Record 17, 21, 275.) [hereinafter Tr.] Her claim was denied on April 15, 2013, and again on reconsideration on September 17, 2013. (Tr. 17.) Plaintiff then filed a written request for a hearing on October 1, 2013. (*Id.*) On February 19, 2015, Plaintiff and vocational expert Tanya M. Edghill ("VE Edghill") appeared and testified at an administrative hearing before ALJ Krappa in Newark, New Jersey. (Tr. 17, 58.) On August 26, 2015, Plaintiff, VE Edghill, and medical expert Dr. Martin A. Fechner ("ME Fechner") appeared and testified at a supplemental administrative hearing before the ALJ. (Tr. 17, 32.) On November 20, 2015, ALJ Krappa determined that Plaintiff was not disabled under §§ 216(i) and 223(d) of the Act from the alleged date of onset through the date last insured (i.e., June 5, 2012 through December 31, 2014). (Tr. 17, 26.)

### B. Factual History

#### 1. Personal and Employment History

Plaintiff was forty-nine years old at the alleged onset of her disability in 2012. (Tr. 238.) She is a high school graduate and has a certification in Network Communications and Information Systems. (Tr. 276.) Plaintiff previously worked as a data administrator, administrative assistant, quality assurance analyst, human resources assistant, contract specialist coordinator, and hotel receptionist. (Tr. 68-70, 250, 270.) Her last significant employment was as a data administrator at a uniform apparel company in 2010. (Tr. 250.) In that position, she completed financial reports, sorted and delivered mail, coded checks for accounts receivable,

processed cancellation letters, and filed customer contracts. (Tr. 252.) She would sit for five hours out of an eight-hour workday. (*Id.*) Subsequently, from April 2011 to March 2012, Plaintiff volunteered as a case manager assistant for a felon reentry program. (Tr. 68-70, 250.) In that position, she assisted felons with their résumés and applications for housing and public assistance. (Tr. 251.) She would sit for five hours a day, and she would lift and carry file folders that weighed less than ten pounds. (*Id.*) Plaintiff has not been employed since 2010, and she has not performed volunteer work since 2012. (Tr. 70-71, 257, 275.)

### 2. Medical History

The record demonstrates that medical practitioners examined, consulted, and treated Plaintiff for the physical symptoms associated with her disability claim. In 2005, Plaintiff treated with orthopedist Dr. Allen S. Glushakow ("Dr. Glushakow"). (Tr. 370-89.) According to Dr. Glushakow's initial report, Plaintiff had been in motor vehicle accidents in 1997 and 2005. (Tr. 370.) Following her first accident, Plaintiff was treated for neck and back problems, "did very well and did not see a doctor for a number of years." (*Id.*) After her second accident, Plaintiff complained of pain in her neck, back, left shoulder and upper arm, as well as numbness in her left hand and right leg. (*Id.*) In July 2005, Dr. Glushakow referred Plaintiff for radiological imaging. (Tr. 757-59.) MRIs showed disc bulges and degenerative changes in the lumbar spine, bulging and multi-level degenerative disc disease in the cervical spine, and a partial tear or tendinopathy in the left shoulder. (*Id.*) In 2013, Dr. Glushakow performed consultative exams on behalf of the State. (Tr. 351-59.)

In February 2006, Dr. Clifford Botwin ("Dr. Botwin") administered corticosteroid injections to Plaintiff's left shoulder. (Tr. 390, 393.) In January 2007, he performed arthroscopic surgery on the same shoulder. (Tr. 391, 409-12.) Dr. Botwin discharged Plaintiff from his care

in February 2007 and noted that the patient had mild discomfort "but generally excellent range of motion." (Tr. 395.)

From 2012 through 2015, Plaintiff regularly met with primary care physicians at Harshem Family Practice & Women's Health, P.C., including Dr. Rita Goradia ("Dr. Goradia") and Dr. Concepcion Dancel ("Dr. Dancel"). (Tr. 638-767.) In May 2012, Dr. Goradia ordered x-rays following Plaintiff's complaints of pain. (Tr. 763-67.) An x-ray of the cervical spine showed reversal of curvature consistent with muscle spasm. (Tr. 763.) An x-ray of the lumbosacral spine showed degenerative disc disease in the L5-S1 region. (Tr. 764.) X-rays of the dorsal spine, pelvis, and hip were normal. (Tr. 765-67.) In May 2013, Dr. Dancel referred Plaintiff for an electromyography ("EMG") of the upper extremities following complaints of numbness and tingling in her hands. (Tr. 584-85.) The EMG report indicated "possible left ulnar neuropathy[,]" but did not show evidence of carpal tunnel syndrome or cervical radiculopathy. (*Id.*)

From July 2013 through January 2014, Plaintiff met with orthopedist Dr. Ronald Daly ("Dr. Daly"), presenting with chronic pain in her cervical and lumbosacral spine, and numbness in both upper extremities. (Tr. 580-83.) From January 25, 2013 through February 7, 2014, Plaintiff underwent physical therapy treatment. (Tr. 416-579, 589-633.)

As of May 2013, Plaintiff was taking the following prescribed medications for her physical symptoms: cyclobenzaprine (a muscle relaxer), ibuprofen (for pain relief), and omeprazole (to protect her stomach). (Tr. 287.)

### 3. Function Report

On February 2, 2013, Plaintiff completed a function report in which she listed her daily activities, including walking her children to school, preparing meals, cleaning the house, grocery shopping, and doing one or two chores a day with her children's help. (Tr. 23, 258-65.) Plaintiff

4

reported that she does laundry with assistance. (*Id.*) She feeds her cat and changes the litter box with help from her daughter. (*Id.*) She has difficulty washing her hair and takes showers instead of baths. (*Id.*) She walks and drives her car independently. (*Id.*) Plaintiff enjoys crocheting but the activity takes her much longer than it has in the past. (*Id.*)

On February 19, 2013, Plaintiff's friend Corina Garcia completed a third-party function report on Plaintiff's behalf. (Tr. 23, 266-73.) Aside from reiterating many of Plaintiff's complaints and daily living activities, Ms. Garcia remarked that Plaintiff prepares meals and completes household chores, though not as fast as she used to. (Tr. 266-73.)

### 4. Hearing Testimony

ALJ Krappa held a hearing on February 19, 2015 and a supplemental hearing on August 26, 2015. (Tr. 32, 58.) Plaintiff testified that she lives with her son and daughter in a basement apartment. (Tr. 67, 75-78.) She was last employed in 2010 as a data administrator for a uniform apparel company. (Tr. 70-71, 250-51.) Subsequently, she volunteered for thirteen months through the Work First program, which she stopped participating in due to her alleged disability. (Tr. 70-71.)

Plaintiff testified that she experiences pain in her lower back, which radiates to her right leg and causes a "pins and needles" sensation. (Tr. 21, 71-72, 81.) Sometimes she can stand for twenty to forty minutes. (Tr. 21, 71-72.) She also testified that her right leg occasionally buckles and "gives out," which has led to several falls. (Tr. 21, 81, 83.) If Plaintiff sits for long periods of time, she must shift around and elevate her leg. (Tr. 21, 72.) She can pick up a gallon of milk from waist high. (*Id.*) She can also lift a ten-pound bag, but she cannot carry it. (Tr. 21, 73.) Plaintiff also has difficulty raising her arms to wash her hair. (Tr. 21, 74.) She has tingling in her ring and pinky fingers through her elbow, which causes her to drop things. (Tr. 21, 82-83.)

5

Plaintiff also testified despite having had arthroscopic shoulder surgery in 2007, she has pain in her left shoulder. (Tr. 79.) At her first hearing, Plaintiff stated that she takes gabapentin for her nerves, cyclobenzaprine as a muscle relaxer, ibuprofen for her pain, and omeprazole to protect her stomach. (Tr. 80.) At her second hearing, Plaintiff stated that she was also prescribed blood pressure medication, which causes her to go to the bathroom frequently. (Tr. 37.)

Plaintiff testified that she had difficulty at her last job due to her medical issues. (Tr. 86-87.) This was in part because her supervisor would be upset if he saw that Plaintiff was elevating her leg while sitting at her desk, walking around after a certain period of time, sitting while filing, or appearing drowsy. (*Id.*) She was laid off and went on unemployment. (Tr. 70.)

VE Edghill testified that a hypothetical individual with Plaintiff's age and experience, who could stand or walk for four hours in an eight-hour workday, sit for six hours in an eight-hour workday, stand and stretch for three to five minutes at the forty-five-minute to one-hour mark, lift twenty pounds occasionally and ten pounds frequently, perform unlimited pushing and pulling within that weight restriction, perform no overhead reaching or lifting with the left extremity, raise the left arm only occasionally to ninety degrees, perform frequent handling and fine fingering with both extremities, could perform Plaintiff's past work as an accounting clerk, data assistant, secretary, human resource assistant, and contracting specialist. (Tr. 94-95.) However, if the same hypothetical individual, due to her pain, could only perform work that is simple and repetitive, she would not be able to perform Plaintiff's past work. (Tr. 95-96.) VE Edghill noted that such an individual could perform unskilled, sedentary occupations, such as compact assembler, preparer, and table worker. (Tr. 96.) In addition, the expert noted that there are also light jobs where an individual can sit most of the day, including inspector and hand packager, ampoule filler, and production assembler. (Tr. 96-97.) However, said individual

6

would not be able to perform any jobs in the national economy if her pain interfered with her concentration, such that she could only concentrate for six hours out of an eight-hour workday, or that she would be absent from work four times a month on a consistent basis. (Tr. 97.)

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). However, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Id.* (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir.

7

2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

### B. The Five-Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial

8

gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in §§ 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rules ("SSR") 85-28, 96-3p, 96-4p.[1] An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the "Listing of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment

---

[1] On June 14, 2018, the Social Security Administration ("SSA") rescinded SSRs 96-3p and 96-4p because the rulings were considered "unnecessarily duplicative" of SSR 16-3p. Social Security Rulings (SSRs) 96-3p and 96-4p; Rescission of SSRs 96-3p and 96-4p, 83 Fed. Reg. 27816-01 (June 14, 2018). The rescissions do not substantively change the SSA's polices and do not affect this Court's analysis.

9

as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the SSA is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the

claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. DISCUSSION

In her decision dated November 20, 2015, ALJ Krappa properly applied the five-step disability test before determining that Plaintiff was not disabled. (Tr. 17-26.) The ALJ's findings are supported by substantial credible evidence. There is no basis for remand or reversal because the ALJ appropriately considered all of Plaintiff's medically-supported complaints as evidenced by her consultative visits and medical treatment.

At step one of the five-step test, ALJ Krappa determined that Plaintiff did not engage in substantial gainful activity between the alleged onset date of her disability through her date last insured. (Tr. 19); *see* 20 C.F.R. § 404.1571 *et seq*. At step two, the ALJ found that Plaintiff's left shoulder and back disorders are severe impairments because they cause more than minimal limitations and are well-documented in the record. (Tr. 19); *see also* 20 C.F.R. § 404.1520(c). The ALJ acknowledged that Plaintiff suffers from hypertension but determined that this physical impairment only minimally limits her ability to perform basic work activities. (Tr. 20.)

At step three, ALJ Krappa found that Plaintiff does not have an impairment that meets the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 461.1526). (Tr. 20.) Plaintiff's impairments were compared with those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 1.02 and 1.04.[2] (*Id.*) In considering § 1.02, the ALJ noted that Plaintiff has effective use of her extremities and that she ambulates normally without an assistive device. (*Id.*) She can perform fine and gross movements

---

[2] Section 1.02 addresses major dysfunction of joints and § 1.04 addresses disorders of the spine.

11

effectively, and there is no evidence that she suffers from neurological deficits. (*Id.*) The ALJ agreed with ME Fechner that the severity of Plaintiff's impairments do not meet or equal any of the listings, either singly or in combination. (*Id.*)

Thereafter, ALJ Krappa followed the proper two-step process to determine Plaintiff's RFC. (Tr. 20.) At the first step, the ALJ found that Plaintiff's alleged injuries to her back and left shoulder, which were corroborated by MRI scans and orthopedic clinical findings, could reasonably be expected to cause pain. (Tr. 21-22.) At the second step, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible.[3] (Tr. 21.) After carefully considering the evidence, ALJ Krappa found that through the date last insured, Plaintiff had the RFC

> to perform light work as defined in 20 C.F.R. 404.1567(b); specifically, she is able to: lift/carry 20 lbs. occasionally and 10 lbs. frequently; stand/walk for 4 hours in an eight hour work day; sit for 6 hours in an eight hour work day (if given the opportunity at the 45 min. -1 hr. mark to stand and stretch for 3-5 minutes); and perform unlimited pushing and pulling within the weight restriction given, except that [Plaintiff] can perform no overhead reaching with the left upper extremity and is only able to lift that arm occasionally to 90 degrees. [Plaintiff] can perform occasional bending and crouching; she is unable to crawl or climb ladders/ropes/scaffolds. [Plaintiff] is able to perform frequent (as opposed to unlimited) handling and fingering with both hands. [Plaintiff] must have ready access to a restroom.

(Tr. 20.)

In reaching this determination, the ALJ found that Plaintiff's treatment and diagnostic records did not support her subjective complaints of bilateral hand numbness. (*See* Tr. 21-23,

---

[3] This Court notes that although SSR 16-3p eliminated the use of the term "credibility" from the SSA's sub-regulatory policy, SSR 16-3p only applies to determinations and decisions made on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304, at *2, 13 n.27 (Oct. 25, 2017). The SSA explained, "[w]hen a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review." *Id.* at 13 n.27. Because ALJ Krappa's decision was issued on November 20, 2015, this Court need not analyze whether the ALJ's decision comports with SSR 16-3p.

12

71-72, 81-83.) The ALJ noted that an EMG report from May 2013 only concluded that left ulnar neuropathy was "possible"; it did not reveal any cervical radiculopathy or carpal tunnel syndrome. (Tr. 22, 584-85.)

ALJ Krappa also found that the clinical and diagnostic evidence did not support Plaintiff's complaints of weakness in her right leg. (*See* Tr. 21-23, 71-72, 81-83.) The ALJ noted that there was no clinical evidence that Plaintiff suffers from neurological deficits or cord compression, and that Plaintiff did not undergo nerve conduction studies of the lower extremities. (Tr. 21.) The ALJ relied on Dr. Glushakow's consultative orthopedic examination from March 2013, which indicated that Plaintiff exhibited a full range of motion in the neck, shoulders, upper extremities, back, hips, knees, and ankles. (Tr. 21, 351-52.) Upon re-examination in August 2013, Plaintiff had tenderness and spasm in her lumbosacral spine with limitation of motion, and decreased sensation over her right calf and the bottom of her right foot. (Tr. 21, 355-56.) However, she still had a full range of motion in her neck, shoulders, elbows, hips, and knees. (*Id*.) Additionally, treatment notes from Plaintiff's primary care physician did not show any clinical evidence of lower extremity radiculopathy, but rather indicated that all systems were negative, gait/station was normal, and motor strength was normal in all extremities. (Tr. 22, 638-767, 773-86.) The ALJ also found that Plaintiff was able to perform a "full array of daily activities[,]" such as walking her children to school, preparing meals, and completing household chores by pacing herself. (Tr. 23.)

ALJ Krappa considered Plaintiff's subjective complaints of left shoulder pain and tendonitis in finding limitations to Plaintiff's ability to reach with her left, upper extremity. (Tr. 20, 23, 25.) The ALJ credited the possibility of left ulnar neuropathy in determining that Plaintiff

13

could perform frequent, as opposed to constant, handling and fingering. (Tr. 20, 22-23.) Her need for ready access to a restroom was also factored into the RFC calculation. (Tr. 20, 23.)

It is well within an ALJ's purview to reject medical conclusions that are not supported by clinical evidence. *See* 20 C.F.R. § 404.1527(c)(2) (detailing how medical opinions are weighed). Furthermore, an ALJ is not required to accept the findings of a claimant's treating doctors. *See Coleman v. Comm'r of Soc. Sec.*, 494 F. App'x 252, 254 (3d Cir. 2012) (explaining that ALJs may choose whom to credit so long as they do not "reject evidence for no reason or for the wrong reason" (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)). Here, ALJ Krappa explained that she gave little weight to an assessment from primary care physician Dr. Dancel, which placed limitations on Plaintiff's upper extremities, because there was no clinical or diagnostic evidence that Plaintiff had abnormalities in her right shoulder. (Tr. 23-24, 768-71.) Additionally, Dr. Dancel specified that Plaintiff could sit or stand for one hour at a time but did not provide a functional assessment of the total number of hours Plaintiff could do so in an eight-hour workday. (Tr. 23-24, 768-71.) Orthopedic surgeon Dr. Daly's RFC assessment was also accorded little weight because his findings were not consistent with Plaintiff's treatment records and because he failed to explain why Plaintiff's ability to sit, stand, and walk was limited. (Tr. 24, 580-88, 634-37.) Other than positive Tinel's sign findings and an EMG showing possible left ulnar neuropathy, Dr. Daly's records showed few positive clinical findings and no evidence of ongoing care. (*Id.*) Lastly, physical therapist Nishitkumar Kaushik's assessment was given little weight because it was based primarily on Plaintiff's subjective complaints rather than objective evaluations. (Tr. 24, 343-45.)

ALJ Krappa accorded substantial weight to the opinions of Disability Determination Services' ("DDS") medical consultants who determined that Plaintiff had a limited, light RFC

with standing/walking of four hours in an eight-hour workday. (Tr. 23, 103-11, 113-25.) The ALJ also accorded substantial weight to ME Fechner's August 26, 2015 supplemental hearing testimony. (Tr. 25, 40-46.) In ME Fechner's opinion, Plaintiff would have been able to perform light work from the onset of her disability until approximately early June of 2013, after which time she would have been capable of sedentary work. (Tr. 25, 42-43.) ME Fechner also testified that Plaintiff could only occasionally bend and crouch, and that she could not use ladders or scaffolding. (*Id.*)

Given Plaintiff's RFC, the ALJ determined at step four that Plaintiff can perform her prior work as an accounting clerk, data assistant, secretary, human resource assistant, and procurement clerk, all of which are categorized as sedentary jobs. (Tr. 25-26, 94.) It is clear that ALJ Krappa considered the vocational expert's testimony as well as the Plaintiff's own descriptions of her past work experience in reaching this determination. (Tr. 25-26, 48-52, 94-100, 244-45, 250-57.) After properly following the five-step disability test, ALJ Krappa determined that Plaintiff is not disabled under the Act. There is substantial credible evidence in the record to support her decision.

## IV. CONCLUSION

Because this Court finds that ALJ Krappa's factual findings were supported by substantial credible evidence in the record and that her legal conclusions were correct, the Commissioner's decision is **AFFIRMED**.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties